All the normal rules apply. First of all, welcome to the virtual version of the Court of Appeals here. Unfortunately, we're not with you all in person. Hopefully, that'll be true again soon. But all the standard norms and rules and customs of the court will apply to this session. I'll just remind you that rebuttal time that you've reserved is intended for rebuttal only. We do not expect new arguments to be made at that time. And with that, we will call the first and only case. Case number 19-11327, Haddock v. Tarrant County. Mr. Taylor, we will hear from you. Thank you, Your Honor. May it please the court. Perhaps the only thing worse than courts that create rights that don't appear anywhere in the Constitution is courts that refuse to recognize rights that have been expressly set forth in the Constitution from the very beginning. The right of people to participate in their own governance, the right to speak about who our elected leaders should or should not be, the freedom to engage in one's own political speech or support a like-minded candidate for office, or as in this case, the right to refrain from doing any of those things but to be married to someone who does, and the right to petition one's government by filing suit to clarify these invaluable rights so foundational to our freedoms and our democracy. Rights so fundamental to liberty that the Supreme Court has said they cannot be bargained away in a contract for public employment. This case involved a State District Judge who violated the right of intimate association with a hostile work environment and the threat to terminate Associate Judge Haddock purely for speech that District Judge attributed to Judge Haddock's husband, Gerald. Then that judge tried to impose the cure for that speech, that is to remedy the situation herself, both by ordering Judge Haddock to silence any further electoral speech by Gerald and by forcing Judge Haddock to publicly support then-candidate Jim Munford while Judge Haddock's employer, Tarrant County, who'd been notified three times of the violation of Judge Haddock's First Amendment rights, remained consciously indifferent to it. Mr. Taylor, can I ask you a preliminary question? Good morning, Your Honor. Good morning. Your client, you've sued the judges of the court, mostly in their official capacity. I know you sued Judge Bennett in her 2011th Amendment, where he says if these judges are essentially arms of the state, if the court is a state entity, not a county entity, then suing the judges in their official capacity is essentially suing the state, and so you can't sue them for damages. You probably disagree that they're an arm of the state, but if they are an arm of the state, the District Judges, and you sue them in official capacity, I think you'd agree with me that you can't get damages from the judges, isn't that right? If they are an arm of the state, I can only get injunctive relief, but that's my question. What kind of a relief are you asking for from the judges in their official capacity? Well, we would be able to get reinstatement, certainly. Okay, is that for young or young, you can only get prospective relief, right? I believe, actually, that I would get reinstatement with both back pay and front pay. Okay, and in your view, I don't know if this was discussed very much, I don't see it much in the briefing, but in your view, reinstatement with back pay is okay under Ex Parte Young? Do you have a view on that? Yes, Your Honor, it is okay. That's exactly what we've asked for. Okay, all right, thanks. I'll ask the other side the same thing. Or front pay in lieu of if, of course, the court performing its analysis finds that reinstatement is not an appropriate remedy, then the court has the equitable power to grant that instead. But just to be clear, you would say that the 11th Amendment isn't even implicated because you're not an arm of the state? I would. Okay. So when Judge Haddock filed a federal court lawsuit to enforce her First Amendment rights as a public employee, Tarrant County and the district judges terminated her within 90 days of her being served. Or to put that more in line with federal court procedure, she filed her lawsuit. They filed 12B6. As she responded, they replied right before the 2018 Christmas, New Year's holidays. And then within three to five days of returning from the new year, they fired her. This violated her First Amendment right to an association, freedom to petition her government, freedom to be free from political patronage requirements, and to the extent any speech attributed to Gerald could also be attributed to her. Any free speech regarding election and the issues, election issues, right, the Supreme Court said, and Citizens United is beyond all doubt protected. Before addressing those specific rights and the tests appropriate to them, I'd like to first address the Mon-El issue, the municipal liability issue. Before you get to that, let's talk about what these positions, I think they're called associate judges. Talk to me about the responsibility of the associate judge and the relationship between the associate judge and the district judge. Well, first of all, unlike most court scenarios, the associate judges do not serve a single district judge. Rather, Tarrant County has set it up under the Family Code statute to where all seven associate judges serve all seven of the district judges. So there are essentially 49 working relationships in development. So the confidential communications that you might otherwise expect. Tell me what the associate judges do, their jobs and what role, how the interplay is between the associate judges. They hear motions. They rule. They schedule. They try cases. They rule on evidence. They make factual findings. And then they write a recommendation, which the district court then reviews and or adopts. The district court can review the associate judge's ruling in the same way that an appellate court would review a trial court. And so they basically just call balls and strikes. And are those rulings are subject to de novo review by the district judges? Yes, your honor. I understand the district judges appoint the associate judges. Do they serve for a term or are they removable at will? They're removable. The appointment has to be unanimous. But then to terminate, only four of the seven must vote to terminate. In other words, Texas could have given them tenure protection as a matter of state law. They could have, that's right. For whatever reason, the state legislature in creating these positions made them de novo, sorry, removable at will at the pleasure of the district judges. At the pleasure of a majority because the seven serves seven. Right. But of course, Texas cannot decide by statute to do away with the First Amendment rights of these. I understand. Of course. So would it be fair to analogize these associate judges and their responsibilities and their relationships with district judges? Would it be fair to analogize that to U.S. magistrate judges and how they do their very important functions working, of course, closely with the U.S. district judges? I do think there are quite a few similarities to be sure. But of course, the associate judges have an independent duty to uphold the Constitution and the laws of the United States. So they they have to act independently to determine the appropriate law and apply law to fact. They're not there merely to implement the policies of the district judges, just like magistrates exercise independent judgment in determining the law and applying the law subject to reversal, of course. I guess my concern here is with your position is these are very sensitive positions. They're very important to the district judges, I imagine, since I know magistrate judges are very important to the U.S. district judges. That's a relationship I know more about than your county. Why isn't that sort of a prototypical confidential relationship? Well, remember, that's an issue on which the government employers have to plead facts. They have to offer evidence and they have to persuade the trier of fact that infringing on First Amendment rights is essential. I'm not sure there are any disputed facts here. I just asked you what these jobs are like and you've told me, quite honestly and dutifully, that these are important positions. Associate judges are critical, I imagine, to the district judges being able to get their work done, just like U.S. magistrate judges are critical to the work of U.S. district courts. Everybody's supposed to follow the law, but in figuring out how to administer justice in these difficult and challenging cases with high stakes for the parties, these are very sensitive matters. Why is this not? I mean, if we were to think of magistrate judges as being in sensitive positions vis-a-vis U.S. district judges, why would the same analogy not hold for associate judges? Well, I think the missing piece of that, Your Honor, is that the Texas Code of Judicial Conduct already sets forth the state policy on that. That is, that judges themselves should refrain from public political activity unless they themselves are a candidate. And, of course, they can do that in favor of their own candidacy, but not only the canons themselves, which don't make any mention of prohibiting the spouses from engaging in political activity, but also there are judicial opinions interpreting the canons that say that there's no restriction on the spouses. Here we have the result where we have a judge telling an associate judge she has to engage in political activity, which the canons arguably say she shouldn't, and then saying that the spouse cannot engage in the political activity, which the canons and the opinions say that he can. So, I suppose, as you know, we have, as U.S. judges, we have, we're blessed with having law clerks to help us work on these cases. Let's say the spouse of a law clerk decides to publicly criticize our court or one of our colleagues or just the entire court. Do you at least acknowledge that creates some awkwardness in terms of these very sensitive internal relationships? It certainly could. However, in your case, respectfully, that would not be election speech or issue speech. That would not be something that the public needed to know, I think, in order to, because these are judicial appointments for life. Well, but there'd be the same First Amendment rights. If your client's spouse has a First Amendment right to engage in speech about a sitting judge, why would a law clerk's spouse not have those same rights? I do think that they would have the right, certainly, to talk about the court. I think we're in a modern society now. People know that judges and their spouses are not the same people. They can hold different views. There have been some public couples, obviously, like James Carville and Mary Madeline, who held diametrically opposite political views, and no one thought the other one, you know, believed something different than what they were saying. So, I do think that, you know, everyone has a right to speak up about their government, certainly. Fair enough. Are you saying President Clinton couldn't regard James Carville as a confidential relationship? I realize, I don't think Carville was ever on White House staff, but you get the analogy. Let's use Madeline, because Madeline was, I believe, on White House staff. Well, right, and I think the issue there is, certainly, there are some relationships that can be so close and intimate. For example, if someone on staff is assisting with re-election, for example, that is a huge place where confidential communications and that kind of trust would have to happen. The burden, of course, is on these government employers to prove that in these 49 working relationships, that not only is that relationship essential to a vital government interest, but it is the least restrictive means of accomplishing it, as opposed to... Are you finished answering the question? I think so, Your Honor. Okay, I'm sorry, I didn't want to interrupt you. You've been relying on the position that judges are not policy makers, but of course, yesterday, the Supreme Court reversed the case that you've been relying on, the Adams v. Carney. So, do you have another case that stands for that? You've been arguing about cases. I don't, Your Honor. I did not see that opinion. I didn't see whether that was reversed on the standing issue, which took up... It's just standing, but it's gone. So, that's the one case that you were relying on. Right. I would just say that, you know, obviously the court didn't really want to hear the merits of it, and I think the reasoning in the case still stands as to the position itself, just because the standing issue was held not to exist. So, you stand by that? I do. And by your position that judges are not policy makers, even though all the other... saying that they are. I do stand by that position, Your Honor, that they are there to independently call balls and strikes, and that they're not there to... other than the possibility of being reversed. They are no more intimate, let's say, than a trial court and an appellate court, and that's our position, Your Honor. Okay. Do you have a view on... it seems the closest case against your position is the Sixth Circuit's Mumford v. Basinski case. It seems to me that the judge set up in that case was quite similar to the district v. associate judge. Do you think that case is wrongly decided? I know we don't have to follow it, but it seems close factually. I do think it's wrongly decided for the same reason, which is that judges do not... which is that the judges call balls and strikes there. I don't think it's appropriate to say that the referees in that case were there to implement the specific policies of the district judges on specific issues. They had an independent duty to follow the law and the evidence as well. I haven't... I haven't made it to Mon-El, and I do need to cover that because otherwise I'd be precluded from covering it in rebuttal. Mon-El, the case that the county is using to try to avoid liability, has suffered pretty much the same fate as the Constitution. For 17 years, from 1961 to and it held they had blanket immunity. Mon-El reversed that and held that they are a person if there is a policy custom or even an action by an individual policymaker. Thank you. You've reserved time and you've certainly preserved the Mon-El issue. Ms. Pettit, I believe you have 13 minutes. Thank you, Judge Ho, and may it please the court. This is a lawsuit about a judge's ability to control his cases and about an elected official's ability to control the individuals who exercise power on his behalf. The district court correctly found that Judge Diane Haddock held a confidential and policymaking role within the Tarrant County Family Court, and that as a result, all of her claims, each of which sounds in the First Amendment, must be dismissed. Ms. Pettit, can I just ask you the same preliminary question? I may be barking up the wrong tree. I was just intrigued by Judge O'Connor's discussion of the 11th Amendment. He seemed to suggest that these judges are state employees or, you know, part of the state for 11th Amendment purposes, and so under an ex parte young analysis, if they're sued in their official capacity, you can only get prospective injunctive relief. In his opinion, he said no one contested that the equitable relief sought here was outside ex parte young. Is that right? Is that your understanding of how this was litigated below? To a certain extent, Your Honor. So to answer the sort of underlying question that the judicial districts do not line up perfectly with counties, and so as a result, there are district judges who relief. It depends on which particular relief Your Honor is asking. What is the relief being asked in this case? I thought it was reinstatement, back pay, front pay. Is that right? So the prayer does not link particular relief to particular claims. There are certain claims that are pursued only against certain judges for prospective reinstatement only, and we don't dispute that that's with an ex parte young. Okay, you're okay with that. You're saying that the prospective reinstatement of a judge, even though it's sort of looking backwards in a sense, is okay. I mean, I ask also because the Sixth Circuit in Mumford throughout the case under ex parte said ex parte young couldn't apply. My understanding is that in the district court, we did not dispute that reinstatement would be appropriate under ex parte young. We do dispute that back pay would under cases like Edelman and we did not dispute the reinstatement aspect under ex parte young. Moving to Judge Ho's question about whether the relationship here, the relationship here is crucial because particularly as it applies to politically elected individuals, the Elrod Branty line of cases recognizes that the First Amendment rights of a confidential or policymaking employee must bend to the employer's to select subordinates who will loyally pursue the policies for which they were elected. To determine whether Judge Haddock filled such a position as Judge Duncan recently recognized in Garza, you take a categorical approach looking to the statutes, regulations, and rules creating the position. Here, that's Chapter 201, Subchapter A of the Texas Family Code, which effectively gives associate judge the same powers as the district judge and in Section 201.002 requires the same qualifications. There are very few statutory limits on how she, as Mr. Taylor described it, exercises her independent judgment in applying those rules. That easily satisfies this court's test under Stegmaier and as Judge Duncan mentioned, is very closely analogous to the rule in Mumford. We believe was correctly decided. Separately, the court considers whether or not the relationship is confidential. That is whether it is the type of close working relationship such as Judge Ho's example of a law clerk that requires a position of trust, confidence, and loyalty to be effective and this is one of those situations. In fact, Judge Haddock affirmatively alleged that she handles 2,500 cases a year. That is roughly 10 cases a day. In order to be able to do that, she needs to have the district judge for whom she reports needs to have a situation, needs to have confidence that she will be pursuing the same jurisprudential philosophy for which he was elected. Otherwise... Can I ask you something? I mean, obviously wrote Garza versus Escobar. In that case, what we thought, it was unanimous, the panel opinion, we thought our precedent required you to go a little bit beyond just policy making and confidential. Those are important ingredients to be sure. But we then went on and said, all right, we also have to show that, I mean, and we quoted Branty, we needed to look and see if the employee's private political beliefs would interfere with the discharge of his or her public duties. So, could you explain to me how Judge Haddock's private political beliefs or the political valence of this case, how did it interfere with the discharge of her duties such that she would fall within Branty and Finkel? Certainly, Your Honor. As Judge Easterbrook mentioned in the Kurowski opinion, which I believe Judge Clement was referring to earlier, judges both create and in that case, the example given was whether or not a particular judge was favorable or disfavorable to the police. In this case, if you look at page 649 of the record, you see a dispute between Judge Munford and Judge Haddock or particularly Judge Haddock's husband, because here there's a lot of overlap and a lot of allegations about imputing one thing to another, about the need and the standard of proof to be shown about whether and when guns should be required to be surrendered for to get a protective order. That is a very important question that's a jurisprudential matter. And if she is working for Judge Munford, as Mr. Taylor suggests, she needs to be sort of rowing in the same direction or Judge Munford is going to have to overturn a lot of her decisions, which undermines the relationship and the role in this court. Does the record reflect that those opinions are hers versus her husband's? Does a record sort of make that distinction for us? No, your honor, the record does not. However, the record was similar in Soderstrom, where there was an elected police chief or sheriff, I'm sorry, I don't remember which, came into office and the confidential secretary of his previous, the previous sheriff, was the wife of a political opponent or the political opponent's nephew. And this court held that that incoming sheriff had a right to pick his own secretary because it was a confidential close relationship and the possibility of mixed loyalties would undermine the ability to pursue that relationship effectively. The 11th Circuit- I hear you. So let me just ask you this straight up. In your view, if the facts were undisputed that Judge Haddock was totally on the same page as Judge Munford on the Second Amendment, but her husband disagreed and he was blogging about it, would firing Judge Haddock on that basis fall within the patronage exemption? Your honor, that would be up to the discretion of the district judges. In Connick, the Supreme Court recognized that most general government firings are not subject to judicial review and that where there is a confidential relationship, considerable discretion is given to the government employer. And here, the government employer determined that the particular, the accumulation of facts alleged in the complaint undermined the confidential relationship to the I mean, I appreciate the candid answer. I mean, I think what you're saying is the government decision maker has to have the discretion to make the assessment about, well, are the husband and wife on the same page? And even to the extent they're not, is it interfering with my relationship with the associate judge such that the work of the court is being disrupted? Is that right? Yes, your honor. So that is the holding of the Elrod-Branty line of cases and it resolves all of the claims here. And I want to turn briefly before I run out of time to the hostile work environment claim that's being pursued against Judge Baca-Bennett. That, your honor, is a species of the First Amendment retaliation claim addressed in Connick itself because a it is a gloss on the adverse employment action that is unique to Title VII. And this court held in Brough v. City of Garland in 2000 that an adverse employment action short of a final employment decision such as a demotion or a termination is not sufficient for a First Amendment claim. And this court recognized in the most recent iteration of the Gibson v. Kilpatrick saga that you have never revisited that question, which is sufficient for qualified immunity purposes. But if the court were to reach the question of whether the First Amendment retaliation claim exists at all in terms of First Amendment liability, then it would be subject to the same balancing analysis that Connick employed, including the importance of the Elrod-Branty exception. So the primary responses that I heard from Mr. Taylor about why this rule shouldn't be dispositive of Judge Haddock's case are that it can't be decided at a motion to dismiss. However, as the Garza decision recognized, if you plead yourself into a pickering balance, as I believe the term used there, but an Elrod-Branty problem, it can in fact be decided at a motion to dismiss. A number of the cases that we cited did. The cases that on which Mr. Taylor relied to say that it must be decided at summary judgment almost uniformly, if not uniformly, predate the tightening of the pleading standards seen in Ashcroft against Iqbal and Tobley against Bell Atlantic. So it can be decided at a motion to dismiss. The second response that I heard was that the associate judge serves seven judges. She can't have a confidential relationship. That might be a circumstance that makes it unfair or inappropriate, but as returning to Connick, the question is not whether it is unfair or inappropriate, but whether the First Amendment prevents the termination here. And respectfully, that particular distinction is not supported by case law. For example, in Kinsey and in Gonzalez and in Soderstrom, there were multiple decision makers that were deciding whether or not the individual should continue to be employed. And this court applied the Elrod-Branty test just as it did for a single employee or a single employer relationship. So that's also not an effective distinction. And turning briefly to the Adams decision, with respect, the vacatur ordered by the Supreme Court yesterday does not leave the reasoning intact. And the reasoning itself was inconsistent with better reasoned opinions from the Seventh and Sixth Circuits, which we respectfully suggest that the court should follow. Unless the panel has further questions, we think that the Elrod-Branty test is dispositive here and that the district court should be affirmed. Thank you, Ms. Pettit. Mr. Ogle, you have seven minutes. Thank you, Judge Ho. May it please the court, counsel. For all the reasons that the AG has stated about the First Amendment, the county is in full alignment with the district judges on the First Amendment issues. And as Judge Duncan's opinion in the Garza case held, if there is no underlying constitutional deprivation, there could be no cannot rest upon Tarrant County and the district court's decision should be affirmed on that basis. Secondarily, on the Monell issue and what I'll primarily address, returning to what Judge Duncan asked counsel for Haddock, the question of are the district judges arms of the state. The McMillian case out of the Supreme Court guides sort of this analysis. And the answer is yes. In fact, Haddock on page 659 of the record, this is her second amended complaint. The live pleading admits that Judge Baca Bennett is a Texas state district judge. And as counsel for the for the district judges articulated, they are state elected policymakers. They operate in a constitutionally delegated sphere of authority. And so turning to the Henry B. Cox decision out of the Texas Supreme Court that then Justice Don Willett wrote, it explains the relationship between a county court, a county commissioner's court and district judges. Each operates in its own sphere of constitutionally delegated authority. And as Judge Willett wrote, then the Texas Constitution, unlike the federal constitution, takes Madison one step further and includes a standalone express separation of powers provision, Article 2, Section 1 of the Texas Constitution, dividing it into three branches and stating that no power attached to one can be exercised by another branch. And here, the core component of the commissioner's court is setting the budget, setting the salary under the family code for these associate judges. On the other hand, the family code gives the appointment power and the termination power solely to the district judges themselves. So the county is constitutionally prohibited from trying to influence the appointment, the termination or the terms of the appointed associate judges of the district courts. And in fact, the legislature has enacted Section 151.004 of the Texas local government code, which gives an even further, stronger indication that recognizing these constitutionally delegated spheres of authority. And it specifically states that a county commissioner's court and no member can even attempt to influence the appointment of an appointed person. And so there can be no question that under Monell, who is the final policymaker, is the district judges and they're operating not for the county, but for the state. Now, in her brief, Haddock has asserted a number of arguments stating that the county is somehow delegated authority, that it is shared authority, that it has the ability to control the district judges and their appointment practices or their conduct to their associate judges. And this is simply not the case because of the constitutional and statutory design. Additionally, the fact that Diane Haddock was given a handbook on day one does not control. And this case in Garcia v. Reeves looks specifically in the context of a sheriff about whether or not a county's handbook could change the at-will status of a sheriff's deputy. And the court said no. If you look at the cases in Rankin, which is a Houston 14th district case, and Abbott v. Pollock, which is a Austin 3rd district case, they are following Supreme Court precedent, but they stand for the proposition that a county commissioner's court cannot assume a duty for the appointment or discharge of a state official's appointee. The county commissioner's court cannot dictate the terms of employment over the state official's appointee, and they cannot contravene state or federal law. So just as in the Garcia case, the county handbook could not change an at-will employment status. In this case, the county's employment handbook could not change, could not preclude an otherwise lawful patronage dismissal. We cannot trump what those judges want to do with their associate judges. And in fact, what would have happened if we had exercised the power of purse, or we had tried to defund the position, or we had barred the district judges from their courthouses, as Haddock suggests in her brief? Well, Article 5, Section 8 of the Texas Constitution gives the district courts general supervisory control back over the county commissioner's court. The final authority rests back with those district judges, and they can't preclude all conduct or actions of the commissioner's court, but the district court has jurisdiction to prevent and deter illegal, unlawful, illegal, arbitrary, and unreasonable county commissioner's acts. And that would include taking away a salary or locking the doors so that the district judges couldn't get in the courthouse until they did whatever the county commissioners wanted. Again, the commissioner's court is constitutionally prohibited from doing this. And I think the question ultimately on who has a duty to protect Diane Haddock or other associate judges. It's not the county commissioner's court or the county HR department. Again, back under the Texas Constitution, under Article 1, Article 5, Section 31 says that the Texas Supreme Court issues rules, the Code of Judicial Conduct, to govern district judges. And Article 5, Section 1A states that the Texas State Commission on Improprieties or Violations of the Judicial Rules. And so if there were alleged violations of judicial canons of conduct, i.e. not getting along with other judges, requiring unlawful patronage of candidates and other things, the duty fell on Judge Haddock, who herself was bound by the judicial canons, to go and report that to the State Commission on Judicial Conduct. In contrast, the county had no duty. And in fact, Canon 6B1A specifically says that the county judge himself or herself would not have a duty when they're administering county business. So on the Monell Policymaker issue, the district judges are the final policymaker operating for the state and no Monell liability can be attributed to the county. And likewise, there was no county policy or custom because there was no final county policymaker. For all the reasons we've stated in our brief, and unless the court has any opinions, other questions for me, I apologize, we ask that the court affirm the district court's order and final judgment. Thank you. I'm sure we'll issue an opinion. Yes. Thank you. Thank you. Mr. Taylor, you reserve five minutes. Yes, Your Honor. I want to first address, I want to come back to, we've now hit upon at least two critical differences between Munford and the other cases that Justice Clement was talking about and this case. The first is the 49 independent working relationships. No case has addressed that specific work environment. And the burden is on the government to establish why in that situation the infringement on the First Amendment rights of the associate judges is still important in that context. And that should not happen on a Rule 12b motion. But the second critical difference is, I believe in every one of those cases, the court personnel and Munford himself, the referee, it was their own opinions that formed the decision to keep them or get rid of them. It was not a spouse's opinion. So none of those cases involve the intimate association rights of any of those court personnel. And that is a huge distinction here. Are we going to be a place that says if you work for the court, then your spouse has to refrain from any public involvement in politics? Or are we going to micromanage on a content and identity basis what that's going to on now, at least with respect to the district judge's position, is it's not just their burden to offer a reason that if it had been the reason could have been the reason and was a good reason. They have to prove that that really was the reason. And that comes back to, you know, when you govern, there's a right way and there's a wrong way. The right way is to sit down, think about the vital of achieving it. These decisions would be made in advance and they would be content neutral without any foreknowledge of who would be hurt or what specific political opinions might be affected. You'd expect to see those rules in job descriptions, policies and procedures manuals, an employee handbook, minutes of official meetings and their formulation in emails, drafts, work notes, perhaps some tweaking along the way. Typically, courts view that kind of advanced content neutral decision making with some deference when it comes to constitutional rights. However, then, of course, there's the wrong way, which is you do nothing. You have no specific rules or standards in place other than the canons of judicial conduct until somebody's spouse does something you don't like and then you retaliate knowing full well who you're punishing and what far more likely to be based on the content of the speech or opinion or the identity of the person than any actual interests of the public office. So we still need a fact finder to determine what was the real reason for the retaliation and hostility by Judge Bennett and for the termination that followed the filing of the lawsuit because merely stating a reason that could have been a reason does not meet the burden. It has to be the reason, it has to be essential to a vital government interest and it has to be the least restrictive means. To be clear, Mr. Taylor, what you are alleging on this point is that Judge Haddock was terminated because Judge Bennett and the other judges disliked her husband's political advocacy. Is that a fair way to characterize your argument or what would you say? We did plead that but we also pled in the alternative that it was the fact that she filed a lawsuit to enforce her rights. It happened 90 days after she filed the lawsuit to enforce and clarify her rights. That's similar though, right? She filed a lawsuit to say, hey, you can't do this, right? The First Amendment prohibits you from harassing me for what my husband's doing. But the right to petition the government is governed by a different strict scrutinies test than the Alrod Bronte test. Okay. So, right. So, finishing up then on Mon-El and the separation of powers argument, I think the important thing to remember is that Tarrant County pays the district judges to supervise and manage their employees and while in the performance of a judicial function by the judiciary, a shared executive function like the management of employees is completely different. And while you certainly think Tarrant County could have done to fix this situation? Well, first, they could have said, you cannot abuse the constitutional rights of our employees and if you do, we're either going to go fund the replacement. Okay. Do you think your client really would go back to work if you were successful in the reinstatement clause? Would she go back to work with these people? I do, your honor. And the reason I think that is because, first of all, elections can change, certainly. Some version of these seven judges run for election every two years. Also, she has 30 of experience in family law and 20 years on the bench and she was very close to reaching full vesting of retirement and yes, I do think she would go back if she were reinstated and she would maximize her retirement and it would certainly be easier to do that than it would be to practice family law in Tarrant County where she has an ethical obligation to disclose to every client that she cannot represent them in Tarrant County family courts because she has a all seven judges are replaced with new judges. Do you dispute that they would not have the right to just pick their own associate judges and not hire your client? I think this court will always retain the right to remedy the First Amendment violation. I don't think they can. That's not my question. Seven completely new judges. People have nothing to do with the difficulties that we're talking about here. Just seven completely new people. Would they have the right to pick their own associate judges and therefore not retain your client as an associate judge? If four of those judges voted to terminate her and if they did and if they did not do so on an unlawful basis, yes, they would have that right. Any other questions? All right. Thank you, counselors. The case is